THE UNITED STATES DISTRICT COURT
FOR EASTERN DISTRICT OF TENNESSEE SOUTHERN DIVISION
AT CHATTANOOGA

| | |
|---|---|
| **Patrick Shane Carmody** )<br>Plaintiff )<br>)<br>) <br>vs. )<br>)<br>**Tennessee Department of Corrections** )<br>**Frank Strada Commissioner,** )<br>**Lee Dotson Asst. Commissioner,** )<br>**Kenneth Williams Former Med. Dir.,** )<br>**Dr. Gail Johnson Med. Dir.,** )<br>**Hlth. Admin. Jane Doe 1,** )<br>**Reg. Warden Michael Genovese,** )<br>**Warden Eller (FNU),** )<br>**A.W.T. Andrews(FNU),** )<br>**Lt. Murphy (FNU),** )<br>**Unit Mngr. Cox (FNU),** )<br>**Disc. Brd. Sgt. MCclure (FNU),** )<br>**Off. Plank (FNU),** )<br>**Grev. Brd. Sgt. Worley (FNU),** )<br>**Off. Roberson (FNU),** )<br>**Centurion of Tennessee, LLC,** )<br>**Steven Wheeler CEO Centurion,** )<br>**Dr. Faber (FNU),** )<br>**Jane Doe Nurse 2 (FNU),** )<br>**Jane Doe Nurse 3[1] (FNU)** )<br>Respondents | Case No. |

I.

## 42 U.S.C.A., § 1983 CIVIL RIGHTS COMPLAINT

**1.** Plaintiff Patrick Shane Carmody brings this civil rights complaint for monetary damages, due to the Abridgement of his Constitutional rights being set forth and secured under provisions of the *Eight and Fourteenth Amendments of the United States Constitution* and the Abridgement of his rights secured under provisions of the *American With Disabilities Act of 1990; Title II and U.S.C. 42 § 12191 et. seq.; Title VII § 12131, 28 C.F.R. § 35.130 (b)(7),* suit by a private

---

[1] Jane Doe 1, 2,and 3 names are unknown, administrators are refusing to provide, thus, will provide after discovery.

1

citizen for monetary damages against public entities, *U.S. v. Georgia, 546 U.S. 151, 160 (1960);*
*of the Civil Rights Act of 1964, 42 U.S.C. § 2000e – 3(a); §§ 504 and 704 (a) of the*
*Rehabilitation Act of 1973; 29 U.S.C. § 794 et. seq.; 42 U.S.C. § 1981 @(b)(3).*

2. This action seeks damages to redress the Abridgement of his Constitutional rights by: the Tennessee Department of Corrections, [herein **TDOC**] and its employees, the (2) Centurion of Tennessee, LLC [herein **Centurion**] and its employees and all named defendants, and all unknown defendants [herein FNU] who acted individually or in concert with each other in their personal and their official capacities with complete awareness, "deliberate indifference", inter alia, "gross negligence", whereby, not providing the Plaintiff with the adequate necessary medical care commensurate with professional norms relating to the injuries that the Plaintiff sustained; and therewith, causing "severe" undue physical, emotional and psychological pain and suffering that could have been prevented by the exercise of "due diligence" and the proper administration of standard medical procedure.

## II.

## JURISDICTION

3. The actions complained upon herein occurred in Johnson County, Tennessee within the jurisdiction and venue of this Respective Court pursuant to: *42 U.S.C. § 1983, 1988 and 28 U.S.C. §§ 1331, 1343 (a) (3)* giving this Court subject matter jurisdiction over state torts and actions for "deliberate indifference", inter alia, "gross negligence" pursuant to the *Tennessee Health Care Liability Act [THCLA]* under , *Tennessee Code Annotated § 29-26-122*, i.e.: Notice and Certificate of Good Faith.

4. The Plaintiff served Certification of Good Faith and Notice to Defendants;]; and TDOC, Frank Strada, Lee Dotson, , Kenneth Williams, Dr. Gail Johnson, Reg. Warden Michael Genovese Warden Eller (FNU), A.W.T. Andrews (FNU), Lt. Murphy (FNU), Unit Mngr. Cox (FNU), Dis. Brd. Sgt. MCclure (FNU), Off. Plank (FNU), Grv. Brd. Sgt.Worley (FNU), Off. Roberson (FNU); Centurion, Steven Wheeler, Hlth. Admn. Jane Doe 1, Dr. Faber (FNU), Jane Doe Nurse 2 (FNU), and Jane Doe Nurse 3 (FNU).

## III.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. Plaintiff filed grievances pursuant to 42 U.S.C. § 1997e (a) and TDOC Policy 501.01 *to no avail* . Plaintiff avers, with specificity, that the grievance procedure is *inept* — effectively *non functional* as an administrative remedy, inter alia, incapable of providing relief. ***Therefore,*** the Plaintiff, ***specifically, moves*** to invoke the ***"Exception to the Rule Doctrine"*** pursuant to Ross v. Blake, ___ U.S. ___, 136 S. CT. 1850, 195 L. Ed. 2d 117 where the Court clarified the standard for exception at; **n. 10 2.,** and PLRA of 1996 § 101(a), 42 U.S.C.A. § 1997 e(a). Plaintiff is timely before this Respective Court.

## IV.

## PARTIES

*Plaintiff:*

6. Plaintiff Patrick Shane Carmody is a citizen of the United States of America that is presently residing in Pikeville, County of Bledsoe, State of Tennessee at Bledsoe County Correctional Complex (B.C.C.X.), however. it should be well noted that at the time relevant to this civil action, or claim within this cause the Plaintiff was residing in Mtn. City, County of Johnson, State of Tennessee at Northeast Correctional Complex (N.E.C.X.).

3

*DEFENDANTS'*

7. **Defendant Tennessee Department of Corrections,** [herein TDOC] is an entity of Tennessee responsible for prisoners under its care, custody and control, ***subcontracted*** specific services to Private Corporations: **[Centurion of Tennessee, LLC** (herein Centurion) through Legislative acts. At all times pertinent hereto the TDOC as a state entity acted under the color of state law, inter alia, the Plaintiff was under their control.

8. **Defendant Frank Strada,** is the Commissioner of the TDOC is the final authority on the rules and regulations, responsible for prisoners under his care, at all times pertinent hereto Defendant Strada violated Plaintiff's Constitutional rights while acting under the color of state law, is sued in his individual and official capacity and can be served at Rachel Jackson Bldg. 320 Sixth Ave. N. 6th Floor Nashville, Tennessee 37243- 0465.

9.**Defendant Lee Dotson**, is the Assistant Commissioner of the TDOC responsible for reviewing Grievances, at all times pertinent hereto Defendant violated Plaintiff's Constitutional rights while acting under the color of state law, sued in his individual and official capacity and can be served at Rachel Jackson Bldg. 320 Sixth Ave. N. 6th Floor Nashville, Tennessee 37243-0465.

10. **Defendant Kenneth Williams,**[2] the medical director for TDOC is a final authority on reviewing, approving, or denying medical treatment, assure Centurion's compliance of their contract. At all times pertinent hereto Defendant violated Plaintiff's Constitutional rights while acting under the color of state law, is sued in his individual and official capacity and can be served at Rachel Jackson Bldg. 320 Sixth Ave. N. 6th Floor Nashville, Tennessee 37243-0465.

---

[2] Dr. Gail Johnson has since replaced Defendant Kenneth Williams as the medical director of TDOC.

4

11. **Defendant Jane Doe 1 (FNU)**, is the Health Administrator at Northeast Correctional Complex, is a final authority responsible for assuring prisoners receive medical treatment, assuring **Centurion** compliance of their contract. At all times pertinent hereto Defendant violated Plaintiff's Constitutional rights while acting under the color of state law, sued in her individual and official capacity and can be served at Northeast Correctional Complex P.O. Box 5000 Mtn. City, Tennessee 37683-5000.

12. **Defendant Michael Genovese,** was the Regional Warden for Eastern District is responsible for overseeing Warden Eller and A.W. T. Andrews on the rules and regulations, responsible for prisoners under their care, at all times pertinent hereto Defendant Genovese violated Plaintiff's Constitutional rights while acting under the color of state law, sued in his individual and official capacity and can be served at Rachel Jackson Bldg. 320 Sixth Ave. N. 6th Floor Nashville, Tennessee 37243-0465.

13. **Defendant Eller (FNU),** is the Warden of Northeast Correctional Complex is the final authority on the rules and regulations, responsible for prisoners under his care, at all times pertinent hereto Defendant Eller violated Plaintiff's Constitutional rights while acting under the color of state law, sued in his individual and official capacity and can be served at Northeast Correctional Complex P.O. Box 5000 Mtn. City, Tennessee 37683-5000.

14. **Defendant Andrews (FNU),** is the Associate Warden of Treatment is responsible for all the treatment and care of prisoners at Northeast Correctional Complex, at all times pertinent hereto Defendant Andrews violated Plaintiff's Constitutional rights while acting under the color of state law, sued in his individual and official capacity and can be served at Northeast Correctional Complex P.O. Box 5000 Mtn. City, Tennessee 37683-5000.

15. **Defendant Cox (FNU),** was the Unit Manger and responsible for the treatment and care all prisoners in his units at Northeast Correctional Complex, at all times pertinent hereto Defendant Cox violated Plaintiff's Constitutional rights while acting under the color of state law, sued in his individual and official capacity and can be served at Northeast Correctional Complex P.O. Box 5000 Mtn. City, Tennessee 37683-5000.

16. **Defendant MCclure: (FNU),** is the Disciplinary Board Sgt. and responsible for ensuring that all prisoners are afforded the right to "due process" of law, the right to a "fair and impartial" hearing, inter alia, the "equal protection" under the law at Northeast Correctional Complex, at all times pertinent hereto Defendant MCclure violated Plaintiff's Constitutional rights while acting under the color of state law, sued in his individual and official capacity and can be served at Northeast Correctional Complex P.O. Box 5000 Mtn. City, Tennessee 37683-5000.

17. **Defendant Plank:**(FNU), was the Unit 14 Officer and responsible for the treatment of all prisoners in her unit at Northeast Correctional Complex, at all times pertinent hereto Defendant Plank violated Plaintiff's Constitutional rights while acting under the color of state law, sued in her individual and official capacity and can be served at Northeast Correctional Complex P.O. Box 5000 Mtn. City, Tennessee 37683-5000.

18. **Defendant Worley:** was the Unit Sgt. supervising Unit 14 Off. Plank and responsible for the treatment and care of all prisoners in her units at Northeast Correctional Complex and is, at this time ,the Grievance Board Sgt. and responsible for ensuring that all prisoners are afforded their right to "due process" of law, the right to a "fair and impartial" hearing, inter alia, the "equal protection" under the law at Northeast Correctional Complex, at all times pertinent hereto Defendant violated Plaintiff's Constitutional rights while acting under the color of state law, sued

in her individual and official capacity and can be served at Northeast Correctional Complex P.O. Box 5000 Mtn. City, Tennessee 37683-5000.

19. **Defendant Roberson:** is the intake officer and responsible for the treatment and care of all prisoners in transit at Bledsoe County Correctional Complex, at all times pertinent hereto Defendant violated Plaintiff's Constitutional rights while acting under the color of state law, sued in his individual and official capacity and can be served at Bledsoe Correctional Complex 1045 Horsehead Rd. Pikeville, Tennessee 37367.

20. **Defendant Centurion of Tennessee., LLC [herein Centurion]** based upon information and belief is a limited liability company whose incorporation or organization is a **Register Agent CT Corporation,** operating out of the State of Pennsylvania, with a corporate office based in Knoxville, Tennessee 39919 -5546. Defendant **Centurion** contracted with the State of Tennessee to provide; medical, dental, mental, and psychological care to TDOC prisoners, as such delegated an essential government function by the state as a *quasi- governmental entity.* At all times pertinent hereto Defendant **Centurion** violated Plaintiff's Constitutional rights while acting under the color of state law, sued in its official capacity and can be served at **CT Corporation** stationed at 300 Montvue Rd., Knoxville, Tennessee 39919-5546.

21. **Defendant Wheeler:** based on information and belief is the Chief Executive Officer of **Centurion who,** by his affixed signature to the Contract between, **Centurion,** the State of Tennessee and is the final authority for promulgating and enforcing Rules, Policies, Practices, and Procedures of **Centurion** to provide; medical, dental mental, and psychological service to TDOC prisoners, responsible for employees under his tutelage, assuring compliance of the contract he signed as CEO. At all times pertinent hereto Defendant Wheeler violated Plaintiff's Constitutional rights while acting under the color of state law, sued in his individual and official

capacity can be served at **CT Corporation** stationed at 300 Montvue Rd., Knoxville, Tennessee 39919-5546.

22. **Defendant Faber:** is the chief physician at Northeast Correctional Complex employed by Centurion responsible for the medical diagnosis of *prisoners* seeking medical care. Defendant Faber is responsible for reviewing, recommend, approving or denying medical treatment and care of prisoners, to prevent unnecessary pain and suffering. At all times pertinent hereto Defendant Faber violated Plaintiff's Constitutional rights while acting under the color of state law, sued in his individual and official capacity can be served at CT Corporation stationed at 300 Montvue Rd., Knoxville, Tennessee 39919-5546.

23. **Defendant Jane Doe Nurse 2 :** is the nurse at Northeast Correctional Complex employed by Centurion responsible for the medical treatment and care of *prisoners* seeking medical care. Defendant is responsible for examining and analyzing medical treatment and care of prisoners, to prevent unnecessary pain and suffering. At all times pertinent hereto Defendant Jane Doe Nurse 1 violated plaintiff's Constitutional rights while acting under the color of state law, sued in her individual and official capacity can be served at CT Corporation stationed at 300 Montvue Rd., Knoxville, Tennessee 39919-5546.

24. **Defendant Jane Doe Nurse 3 :** is the nurse at Northeast Correctional Complex employed by Centurion responsible for the medical treatment and care of *prisoners* seeking medical care. Defendant is responsible for examining and analyzing medical treatment and care of prisoners, to prevent unnecessary pain and suffering. At all times pertinent hereto Defendant Jane Doe Nurse 1 violated plaintiff's Constitutional rights while acting under the color of state law, sued in her individual and official capacity can be served at CT Corporation stationed at 300 Montvue Rd., Knoxville, Tennessee 39919-554

## V.

## CAUSE OF ACTION

On or about Nov. 21st, 2023[3], I sustained what would later be determined to be a "catastrophic" injury due to the (TDOC) Tenn. Dept. of Corr.'s "deliberate indifference" whereby I landed in a hole or crater on the ballfield while running during a soccer game in the closing minutes of recreation of which could have been prevented, due to the fact, the staff had closed the ballfield for two - winters consecutively for the purpose of repairing the turf of which had been never addressed. Thereafter, with only a limited amount of time before count I returned to Unit 12 to be locked down and afterwards when let off lockdown attempted to walk to lunch but could not sustain a continuous gate and had to sit down on the ground at the security checkpoint where I notified Off. White (FNU) of my difficulty to walk. Following lunch I fell outside Unit 12 because I had become numb from the waist down and could not sustain my balance or spatial orientation as it relates to walking; and therefore, I was taken to the clinic whereupon I was seen by Jane Doe Nurse 1 and held for basic medical care, such as but not greater than, (pulse checks, blood pressure checks, and temperature check) and then asked the attending physician, if, the medical staff was going to wait until I was numb to my shoulders before they would airlift me off the compound from which Dr. Faber replied , and I quote:

**[He would not waist (60,000) dollars to airlift me off the compound.]**, end quote; and therefore, I had been summarily told to go back to my cell that there was nothing wrong with me whereupon I later fell, once again, hitting my head on the toilet due to my inability to walk; and subsequent thereto, I was escorted by medical staff back to the clinic where I had been informed that they would be placing me in a holding cell located in the clinic for observation over the weekend until Dr. Faber returned.

---
[3] Date is uncertain due to the fact the (TDOC) will not provide me with the exact dates of which I was injured.

It should be well noted that at this time of the year the temperature in Mtn. City was in the mid to low twenties temperature range, or (20) degrees, inter alia, the clinic staff were operating the air conditioning system in an attempt to dissuade inmates from being housed there. Within the first few hours of the first day of being housed in the clinic, it became obvious that I had suffered a "catastrophic" injury, due to the fact, I could only maintain a "plank position" in the bed due to the "extreme" pain that I was suffering from that of which felt as if I was being symmetrically pulled apart.

During the first day of being confined in the clinic cell, I began to experience an inability to urinate due to what appeared to be some sort of blockage within my urinary tract; therefore, I would attempt to urinate at times of which required me to traverse the large cell area from the bed to the toilet of which required me to hold on to the interior walls of the cell and make my way, accordingly. Throughout this process of attempting to urinate, I began to experience a significant amount of blood being discharged from my penis, and an "extreme" amount of pain of a magnitude of the highest of orders such as I had never experienced in my life. I believe that on the second day of being housed in the clinic cell, I realized that my body must have been in the process of passing kidney stones because of the inordinate amount of pain that I had been experiencing. At that point in time, I began to strain myself at regular intervals in an attempt to expedite the passing of the kidney stones, but to no avail! These futile attempts continued throughout the day on a restricted basis due to the fact of having to traverse the interior walls of the cell in conjunction with the "extreme" pain from which I was suffering until finally that evening I had been able to pass the first of what was to be in total three – kidney stones altogether over the course of the weekend of which almost killed me in the process.

After experiencing a myriad of cruel and unusual actions by the medical staff throughout the weekend that shall not be specifically identified at this juncture, I had been informed by Jane Doe Nurse 2 (FNU) that I would be required to move back to my cell in Unit 12 and that I needed to hurry and leave the clinic, *"and that they would be taking my wheelchair"*, however, I explained to her that I was unable to properly use my coordinative skills, nor spatially orient my attempted walking. In a moment of disbelief, Jane Doe Nurse 2 stated, and I quote: **[I'm going to relearn you how to walk.],** end quote; and therewith, proceeded to grab my arm and began to pull me down the hallway of the clinic, even though, I was begging her to stop of which terrified me and had been witnessed by a number of individuals. Finally, the medical staff permitted me to go back to the cell from which I came after the clinic janitorial staff inmate cleaned the urine and blood off the floor that had accumulated over the weekend of which caused me great psychological harm throughout the weekend by having to traverse such a dangerous condition to access the toilet.

Let the record reflect that following being checked – out of the clinic cell area, I had been issued a walker instead of the wheelchair that I had been provided previously. Accordingly, I was forced to drag my right leg on the sidewalk behind the walker, due to the fact, the positioning of my feet had been altered because of the *"severe spinal stenosis"* that I had suffered of which transferred into the constituent muscle groups damaging my right groin muscle to such an extent that any movement whatsoever was *"excruciatingly"* painful that prevented me from accessing the cafeteria resulting in me missing a myriad of meals causing extreme detriment by diminishing my health considerably; and therefrom, placed me in a *"spiraling psychological state"* reducing me to but a *"shadow of a man"*, especially, in consideration of the fact that a number of correctional officers that had been illegally been introducing drugs at (N.E.C.X.) had joined into an alliance to harm me because I had contacted the Deputy Att. Gen. of Madison County regarding their crimes.

11

Now, at this juncture, I believe that it is imperative to articulate the underlying foundational elements that existed at (N.E.C.X.) that created the *"extraordinary and exceptional"* *"aggravating circumstances"* by the staff that of which I had been subjected to prior to the injury, and throughout this traumatic ordeal at (N.E.C.X.), in order, to show how each individual defendant played a role in conspiring to cause me *"psychological, emotional, and physical harm of a magnitude of the Highest of Orders.*

First, as it relates to Defendant Off. Plank (FNU) the unit officer assigned to Unit 14 where I lived, she had been introducing contraband along with other officers, such as but not limited to drugs, to certain inmates on a regular basis of which I had intimate knowledge due to the fact my job assignment included my presence in the field office where the officers took their lunchbreaks of which made me privy to certain conversations and illegal acts; and therefore, I proceeded to quit my job because of inmates dying from overdosing on Fentanyl. Following my exodus from my position in the field office, Off. Plank acted under the color of state law while I was under her control to advance a frivolous disciplinary infraction against me after being released one day from my new job assignment on the yard crew, whereupon, I simply asked to access my cell to take a shower in order to remove the grass from my person before going to lunch. After making me wait for approx. (20) twenty – minutes *"without incident"* in front of my cell, she informed me and I quote: [ *"that I was on her time and she would open the cell when she pleased"*], end quote, and then I informed Off. Plank she needed to leave me alone, especially, when I was aware that she was illegally introducing drugs into prison. Thereafter, I then attempted to take a shower, however, as soon as I entered the shower Off. Plank announced the lunch call - out, in order, to **"willfully and knowingly"** preclude me from being able to eat; and therefore, I exited the shower and asked that a Sgt. be called to assist me in being able to eat following mowing grass all morning.

12

As I repeatedly asked Off. Plank for assistance from the Unit Sgt. to be allowed to go eat, Counselor Bradshaw (FNU) hit the panic code button on his radio apparently thinking that my requests for assistance was actually Off. Plank requesting assistance of which as stated *"was not"* the case. Within minutes, Off. Robinson and Off. Swallow entered Unit 14 and proceeded to ask me who was causing the problem since I was in close proximity to the front door leaning against a column that I had been instructed to do. At that point in time, Counselor Bradshaw pointed at me of which prompted Off. Swallow to state, and I quote: [*"You called us all the way up here because of him when he causes no problems, whatsoever"*], end quote. At this juncture, I was instructed to go to my cell and get dressed, *"without escort unattended"*, and that they would try to sort out what was going on. It should be well noted that *"at no time whatsoever had I been restrained in any capacity"* by Off. Robinson or Off. Swallow of which is standard procedure when a panic code is issued, due to the fact, both Off. Robinson and Off. Swallow stated that there was no need to restrain me since I had worked for the administration and never presented an issue of disobedience or disciplinary behavior. I then proceeded to follow both Off. Robinson and Off. Swallow down to intake where they could discuss the situation with Capt. Murphy the shift supervisor, in order, to find out what was to be done regarding the situation that had manifested by Counselor Bradshaw improperly hitting his panic code button when he personally had not witnessed any disciplinary infraction behavior whatsoever that would have justified such an extreme action. Accordingly, I was instructed that I would be required to stay in the holding cell in intake for a couple of hours until after count – time, in order, to rectify the situation and make sure that there was no genuine issue to be addressed. After being released, I was instructed that Off. Plank would be advancing a disciplinary infraction of **"defiance"** against me, in order, to justify Counselor Bradshaw's improperly issuing a panic code.

Subsequent to being released from the holding cell in intake, I had been informed that I would be required to go back to my cell in Unit 14 and back my property, due to the fact, I was being removed from Unit 14, of which is an honor unit, and being transferred to Unit 12, of which is also an honor unit, however, is populated with an *"overwhelming"* amount of gang members of which made *"no sense"*, especially, when I had been charged with a disciplinary infraction. More importantly, it should be well noted that this transfer had been *"directed"* by Unit Manager Cox (FNU) and Capt. Murphy (FNU) that of which had placed me directly across the unit from the head gang member that Off. Plank had been introducing contraband into the facility with being *"square within the cross – hairs"*, in order, to send me a profound message that I need to watch what I say that was confirmed later that evening by the aforementioned head gang member's constituents. Following being served with the disciplinary infraction, it became completely apparent that Sgt. Worley had not only created an entire *"false narrative"* contained within the body of the disciplinary description section, but had omitted a large portion of the events that had transpired throughout the ordeal creating a *"contextual void"* relating to the (20) twenty – minutes that had elapsed *"without incident"*, in order, to *"foster a false impression"* resulting in *"substantial unfair prejudice"* of a magnitude of the Highest of Orders of a Constitutional nature, irreparably. Shortly thereafter, I composed a letter to the Deputy District Attorney General of Madison County, Shaun Allen Brown, whom of which had been a life long friend, stating that my life was in danger by a number of officers who had been illegally introducing drugs into the prison that had resulted in the deaths of inmates. Afterwards, I proceeded to Disciplinary Sgt. McClure to request a continuance relating to the disciplinary infraction, however, was informed that they would be dismissing the disciplinary charges, due to the fact, that I had been properly released from my job assignment of which reduced the disciplinary infraction to *"Notwithstanding"*.

14

However, the very next day I was summoned to the disciplinary board and subjected to a trial by ambush conducted by Dis. Brd. Sgt. McClure and found guilty of the offense of *"Defiance"* without ever being consulted by an inmate advisor prior to the hearing, and in fact not becoming aware of who my inmate advisor had been until approximately a week after the *"travesty"* itself. As a matter of fact, I had questioned Inmate Advisor Justice (FNU) who the other individual was that was present during the disciplinary hearing on the far side of the room away from me that should not have been present during the taking of testimony according to (TDOC) policy and procedure. Accordingly, I appealed to Warden Eller (FNU) whereby not only contesting the substance of the *"false narrative"* that had been *"unlawfully"* created by Sgt. Worley, but as importantly the *"unlawful"* process and procedure that had been employed by Dis. Brd. Sgt. McClure, however, even until this day I have never been provided with any answer from Warden Eller (FNU). Therefore, let the record reflect that the Plaintiff has never been afforded any opportunity let alone an *"objectively reasonable opportunity"* to exhaust the remedies that have been set in place by the (TDOC) as it relates to disciplinary procedures, such as but not limited to, appealing to the Commissioner of (TDOC); and accordingly, due to the fact that no remedy exists for the correction of these *"unlawful"* acts the Plaintiff has no other recourse except to include these offenses in the forthcoming civil rights action because all these events are, without question, *"willfully and knowingly"* interconnected exhibiting the essential elements of an ongoing conspiracy by several (TDOC) officers along with the Centurion medical staff members by "deliberate indifference" to harm the Plaintiff. Thus, the Plaintiff's right to "due process" of law, the right to a "fair and impartial hearing", the right to the Assistance of Counsel for his defense, inter alia, the "equal protection" of the law has been and remains *"unlawfully"* Abridged causing *"substantial unfair prejudice"* of the Highest of Orders, irreparably!

## VI.

### *Synopsis of Continuing Violation Doctrine*

After being transferred to (BCCX) Bledsoe County Correctional Complex Site 1, I finally began to receive some semblance of medical attention in the form of additional X-rays and the attending physician ordered that I was to be provided with a wheelchair that had been improperly taken from me while I had been in transit at (BCCX) Bledsoe County Correctional Complex a few months prior by Off. Roberson; and in addition, that I would be receiving a "zoom visit" with an orthopedist in the coming weeks. However, a few weeks had passed when I had been reassigned to (BCCX) Site 2; and thereupon, during a routine examination in the clinic unrelated to this case, I conveyed to the attending physician, Dr. Samuels, the nature of my injury, and the fact that I had received absolutely "no substance" of medical care or treatment throughout this entire ordeal by the provider Centurion CT Corporation, nor the (TDOC) Tennessee Department of Correction.

Accordingly, Dr. Samuels ordered that I be sent to (SNP) Special Needs Prison in Nashville to finally be provided an (MRI) magnetic resonance imaging examination or test, in order, to ascertain the nature of, and the full extent of my injury finally after (9) nine-months of "no medical care or treatment" and being told that my spine was healthy, inter alia, that I had been suffering from "psychosomatic delusions" and that my inability to walk was all in my head. Following being provided the (MRI) at (SNP) in Nashville, I returned to (BCCX) Site 2 and awaited the results of which revealed that I had been suffering from "catastrophic" spinal stenosis and the corresponding nerve damage commensurate with such an injury throughout L2 - L5 of the lumbar system that would, without question, require extensive surgery.

15

# VII.
# PRAYER FOR RELIEF

**WHEREFORE PREMISES CONSIDERED,** Plaintiff respectfully requests:

a) That process issue and be served upon Defendants' requiring them to appear and answer this Complaint within (30) thirty – days in accordance with Federal Rules of Federal Procedure.

b) That the Defendants practices complained herein be declared in violation of the First, Eighth, and Fourteenth Amendment of the United States Constitution.

c) That Plaintiff be granted any compensatory damages to which he is entitled to recover for the wrongful actions arising from Defendants' conduct while acting under the color of state law as set forth herein;

d) That the Plaintiff be granted monetary damages from all Defendants to which he is entitled under 42U.S.C. § 1983 as a result of the actions of while acting under the color of state law complained of herein in the sum of:

- **Defendant Tennessee Department of Corrections** [herein TDOC] is sued for monetary damages **One Dollar Nominal Damages, One Dollars (1.00) Punitive damages, and One Dollars (1.00 Compensatory Damages;**

- **Defendant:** Frank Strada, Commissioner is sued in his personal capacity for monetary damages in the amount of: Two-Hundred and Fifty Thousand Dollars (250,000) **Nominal Damages**, Two-Hundred and Fifty Thousand Dollars (250,000) **Punitive Damages**, and Five-Hundred Thousand Dollars (500,000) in **Compensatory Damages;**

- **Defendants:** Lee Dotson, Asst. Commissioner, Kenneth Williams, Dr. Gail Johnson, Medical Dir., Jane Doe, are sued in their individual and official capacities for monetary damages in the amount of: Two-Hundred and Fifty Thousand Dollars (250,000) **Nominal Damages,** Two-Hundred and Fifty-Thousand Dollars (250,000) **Punitive Damages and** Five-Hundred Thousand Dollars (500,000) **Compensatory Damages** each;

- **Defendant:** Michael Genovese, was the Regional Warden is sued in his individual and official capacity for Five-Hundred Thousand (500,000) **Nominal Damages**, Five-Hundred Thousand Dollars (500,000) **Punitive Damages**, One-Million Dollars (1,000,000) **Compensatory Damages**;

- **Defendants:** Eller (FNU), Andrews (FNU), Murphy (FNU), are sued in their individual and official capacity for monetary damages in the amount of: Two-Hundred and Fifty Thousand (250,000) **Nominal Damages**, Two-Hundred and Fifty Thousand (250,000) **Punitive Damages**, Five-Hundred Thousand (500,000) **Compensatory Damages each**;

- **Defendants:** Cox (FNU), McClure (FNU), Plank (FNU), Worley(FNU), Roberson (FNU), are sued in their individual and official capacity for monetary damages in the amount of Five-Hundred Thousand Dollars (500,000) **Nominal Damages,** Five-Hundred Thousand (500,000), **Nominal Damages**, Five-Hundred Thousand Dollars (500,000) **Punitive Damages**, One Million Dollars (1,000,000) **Compensatory Damages** each;

e) **Defendant: Centurion of Tennessee LLC.,** Steven Wheeler CEO, Dr. Faber (FNU), Jane Doe Nurse 2, Jane Doe Nurse 3, are sued in their individual and official capacity for monetary damages in the amount of One Million Dollars (1,000,000) **Nominal Damages,** One Million Dollars (1,000,000) **Punitive Damages**, Two Million Dollars (2,000,000) **Compensatory Damages;**

f) That the Plaintiff is awarded a trial by jury.

g) That the Plaintiff be allowed to proceed in *forma pauperis.*

h) That Plaintiff is awarded such other, further and general relief to which he may be entitled under either law or equity.

i) That counsel be appointed to assist Plaintiff as elbow counsel for pretrial conference and trial.

**IT IS PRAYED**

Respectfully submitted

*Patrick S. Carmody*
**Patrick S. Carmody**

### DECLARATION OF TRUTH UNDER 42 U.S.C.A 1746 (e)

I, Patrick S. Carmody, Plaintiff *pro se* hereby certifies under penalty of perjury pursuant to 42 U.S.C.A § 1746 and all applicable laws of the United States of America that the foregoing is true and correct to the best of my knowledge, belief and understanding…**AND…**

### CERTIFICATE OF SERVICE

I, Patrick S. Carmody, Plaintiff *pro se* farther avers that a true and exact copy of the foregoing was placed in the BCCX mail box with sufficient first-class postage prepaid to United States District Court for the Eastern District of Tennessee, Clerk of the Court -John L Medearis, at 900 Georgia Ave. Rm 309, Chattanooga, Tennessee 37402 on this 26 day of Dec. 2023, 2023 by:

Respectfully submitted

*Patrick S. Carmody*
**Patrick S. Carmody**